**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (SH-1887)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS RAUL CUADRA, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>RENTECH, INC., JEFFREY R. SPAIN, and KEITH B. FORMAN,<br><br>      Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carlos Raul Cuadra ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Rentech, Inc. ("Rentech" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

1

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants, who purchased or otherwise acquired the publicly traded securities of Rentech between November 9, 2016 and February 20, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.    Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants' actions, and the subsequent damages, took place within this District.

5.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased Rentech securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Rentech, through its subsidiaries, provides wood fiber processing services, wood chips, and wood pellets. The Company is incorporated in Colorado and its principal executive offices are located at 2000 Potomac Street NW, 5th Floor, Washington, DC 20007.  The Company's common stock is traded on NASDAQ under the ticker symbol "RTK."

8.     Defendant Keith B. Forman ("Forman") has been the Chief Executive Officer ("CEO") and President of Rentech since December 10, 2014.

9.     Defendant Jeffrey R. Spain ("Spain") has been the Chief Financial Officer ("CFO") of Rentech since December 7, 2015.

10.    Defendants Forman and Spain are sometimes referred to herein as the "Individual Defendants."  Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)      approved or ratified these statements in violation of the federal securities laws.

12.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

15.    On November 9, 2016, the Company filed a Form 10-Q for the quarter ended September 30, 2016 (the "3Q 2016 10-Q") with the SEC, which provided the Company's third quarter 2016 financial results and position. The 3Q 2016 10-Q was signed by Defendants Forman and Spain. The 3Q 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Forman and Spain attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

16.    The 3Q 2016 10-Q touted the production capability of Rentech's wood pellet facility in Wawa, Ontario, Canada (the "Wawa facility"), stating in pertinent part:

The Company's wood pellet facility in Wawa, Ontario, Canada (the "Wawa Facility") is expected to be able to produce between 400,000 and 450,000 metric tons of wood pellets annually. During the ramp-up of the Wawa Facility, the Company discovered the need to modify or replace a significant portion of the plant's conveyance systems. The first phase of modifications of the plant's conveyance systems was completed in late 2015. A second group of conveyors was replaced during the first quarter of 2016. The remaining work to the conveyance systems was completed in the third quarter of 2016, during which time the facility was down for approximately five and a half weeks to replace the conveyors and to perform other maintenance work and repairs. As the Wawa Facility ramps up out of the latest shutdown, the Company will continue to investigate whether there are potential design and equipment shortcomings and the potential impact, if any, on achievable uptime and operating efficiency rates that will ultimately determine the exact capacity of the facility. The Company's discussions with other pellet producers and engineering firms over the past year have shown that there is a wide disparity of these rates across established industrial pellet manufacturing plants in North America. If the Company applies a range of assumed operating efficiencies typical for the industry, the plant's annual production capacity would be in a range between 400,000 and 450,000 metric tons. We have also observed that historically within the wood pellet industry that ramping up to full design capacity takes considerable time, several years in most cases. Coming out of the recent shutdown the conveyance systems appear to be operating as expected, but we have experienced other challenges in ramping up production. The Wawa Facility is averaging weekly operating rates that annualize to produce approximately 150,000 metric tons of wood pellets and the Company is working to resolve the remaining equipment and operating challenges to incrementally increase production over the next several quarters. The Company does not expect the Wawa Facility to reach the annual production capacity range described above until late 2017. At a production capacity of 400,000 metric tons, the Company believes it would be able to fulfill the annual obligations under its contract with Drax Power Limited ("Drax") and to generate positive cash flow. However, operating costs at the Wawa Facility have been higher than originally expected, and may continue to be so going forward, which negatively impacts profitability under the contract with Drax. In addition, oil prices, which drive indexation of prices in our Drax contract, have declined more than Canadian diesel prices, a material component of our fibre supply costs, which is negatively impacting margins on deliveries to Drax.

At September 30, 2016, remaining cash expenditures to complete the modifications to the Atikokan and Wawa Facilities are expected to be approximately $14.5 million, which includes approximately $5.0 million for potential additional conveyor replacements at the Atikokan Facility and other potential improvements that are on hold by the Company. Of the $14.5 million, $6.6 million is recorded in

accounts payable and accrued liabilities as of September 30, 2016. The Company expects that cash on hand will be sufficient to fund the Atikokan and Wawa Facilities until they begin to generate positive cash flow on a combined basis.

17.     On November 10, 2016, Rentech held a conference call with investors and analysts to discuss the Company's third quarter 2016 financial results and position (the "Q3 2016 Conference Call"). On the Q3 2016 Conference Call, Defendant Forman touted the production capability of the Wawa facility and Rentech's ability to overcome any operating challenges at the Wawa facility, stating in pertinent part:

> With respect to Wawa, we completed startup and commissioning of the new conveyors at the facility last month, following an approximately 5.5 week shutdown that also included performing maintenance and repair work. The plant is currently achieving operating rates that annualized to approximately 150,000 metric tons of production, which is essentially the level achieved prior to the conveyor project.
>
> The new conveyors are functioning as expected, but we are working to resolve other equipment and operating challenges that have manifested themselves post turnaround. Throughout the ramp-up we are focused on ensuring that Wawa is able to sustain incrementally higher production rates with all of the new conveyors and equipment.
> The plant personnel gain experience operating at higher rates in an orderly progression and the feedstock suppliers can ramp up their harvesting and delivering activities in order to meet our higher fiber feedstock needs. While we expect Wawa to achieve consistent improvements in operating efficiency, we continue to be vigilant in monitoring the plant's various processes to identify any potential bottlenecks in a timely manner and address them prior to any bottleneck having a significant impact on production.
>
> **We expect the plant to reach approximately 60% of production capacity within the next couple quarters and anticipate reaching full capacity in the range of 400,000 to 450,000 metric tons late in the year.**
>
> At an annual production rate capacity of 400,000 metric tons, we would be able to fulfill our yearly obligations under the Drax contract and generate positive cash flow at Wawa based on today's economic variables. We are currently evaluating our stabilized EBITDA outlook as Wawa continues ramping up production given that operating costs of Wawa have been higher than expected and may continue to be so going forward, which will negatively impact profitability under our contract with Drax.

\*        \*        \*

**We have identified and deployed additional engineering, technical and operating resources for Wawa, we believe will be able to help us overcome any operating challenges and remaining bottleneck at the plant that may arise as we ramp up to full capacity.**

[Emphasis added].

18.    The statements referenced in ¶¶ 15-17 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Rentech's resources were not sufficient to overcome any operating challenges and remaining bottleneck at the Wawa facility; (2) consequently, the Wawa facility would not reach approximately 60% of production capacity within the next couple quarters and achieve full capacity in the range of 400,000 to 450,000 metric tons late in the year; (3) as a result, Defendants' statements about the Company's business, operations and prospects were materially false and misleading and/or lacked a reasonable bases at all relevant times.

## The Truth Emerges

19.    On February 21, 2017, before market hours, Rentech issued a press release entitled "Rentech Idles Wawa Facility; Exploring Strategic Alternatives," announcing that it would idle its Wawa facility due to equipment and operational issues and that it is exploring strategic alternatives for both the Wawa facility and Rentech as a whole, stating in pertinent part:

**Rentech Idles Wawa Facility; Exploring Strategic Alternatives**

**Provides Updates on Business Units**

- *Wawa facility continues to experience equipment and operating challenges; plant is being idled to reduce near-term cash needs in Canada and preserve liquidity for Rentech (the Company)*
- *Atikokan facility production being reduced to levels required to fulfill OPG off-take contract*
- *Pellet sales at NEWP continue to be sluggish*
- *Customer plans to exercise purchase option for two of Fulghum's U.S. mills*
- *Exploring strategic alternatives for Wawa facility and the Company as a whole*

February 21, 2017 06:30 AM Eastern Standard Time

WASHINGTON--(BUSINESS WIRE)--Rentech, Inc. (NASDAQ: RTK) announced today that i**ts board has decided to idle the Wawa facility due to equipment and operational issues that would require additional unbudgeted capital investment**. Today's decision also results from continued uncertainty around profitability on pellets produced at the facility, making additional investment in the facility uneconomic for Rentech at this time. Idling the plant will allow Rentech to conserve liquidity as it formally explores strategic alternatives for the plant including ongoing discussions with third parties. In conjunction with the strategic review of the Wawa facility, Rentech is also exploring strategic alternatives for the Company as a whole. In addition to these announcements, Rentech is providing updates on its other operating businesses.

**Wawa Facility**

As noted in prior communications, the Wawa facility experienced equipment and operating challenges subsequent to the replacement of problematic conveyors last fall. These issues have persisted.

On February 16, 2017, our board made the decision to suspend operations at the facility. This decision is based in part on our review of the work by a third-party engineering firm to identify necessary capital improvements. While we believe that the issues we have been experiencing at the facility can be resolved with additional capital investments, we have concluded that it is not economical to pursue those investments or to continue to operate the facility at this time. Rentech's other businesses, including its Atikokan facility, continue to operate without interruption.

As a result of this decision, the Wawa operations team will immediately begin a safe and orderly idling of the facility, which the Company expects to complete in

8

approximately two weeks. When the facility is successfully idled, a small workforce will remain in place to maintain the plant so that it can resume operations with minimal cost and time if there is interest from a third party to invest in or purchase the facility. The remainder of the workforce will be placed on a temporary layoff while options for the facility are explored.

Rentech expects to incur a significant asset impairment charge relating to the Wawa and Atikokan facilities in its fourth quarter 2016 results.

*       *       *

**Strategic Alternatives Review Process**

**Rentech intends to explore strategic alternatives for the Wawa facility and for the Company as a whole.** In conjunction with this process and to address potential future liquidity needs, Rentech is considering strategic alternatives that may include, but are not limited to, a sale of the Company, a merger or other business combination, a sale of all or a material portion of the Company's assets or a recapitalization.

Rentech has retained Wells Fargo Securities, LLC to assist in the strategic alternatives review process. The Company does not intend to disclose developments with respect to this review until either the Company's board has approved a definitive transaction, it is required to do so by law, or if such disclosure is deemed appropriate. The Company cautions that there is no guarantee that the strategic review will result in a transaction or if a transaction is undertaken, as to its terms or timing.

If an appropriate strategic alternative is not achieved on a timely basis, and if the Company were otherwise unable to secure additional sources of funds to address potential future liquidity needs, there could be a material adverse effect on the Company's business, results of operations, and financial condition. The Company had cash of approximately $20 million as of February 17, 2017 (excluding cash held by its operating subsidiaries in Canada and South America). In addition, the Company expects NEWP and Fulghum to generate positive cash flow and be self-sufficient from a liquidity perspective in 2017.

[Emphasis added].

20.    On this news, shares of Rentech fell $1.31 per share or over 47% from its previous

closing price to close at $1.44 per share on February 21, 2017, damaging investors.

21. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Rentech securities publicly traded on NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Rentech securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

24. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

25.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

26.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

c.      whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

e.      whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

f.      whether the prices of Rentech securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

28.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Rentech securities are traded in efficient markets;

d.      the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on NASDAQ, and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased and/or sold Rentech securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

29.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

30.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

31.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

33.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

34.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Rentech securities during the Class Period.

35.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

36.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

37.     As a result of the foregoing, the market price of Rentech securities were artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Rentech securities during the Class Period in purchasing Rentech securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

38.    Had Plaintiff and the other members of the Class been aware that the market price of Rentech securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Rentech securities at the artificially inflated prices that they did, or at all.

39.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

40.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Rentech securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

41.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

43.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

44.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Rentech securities.

45.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complaint.

46.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

16

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: March 7, 2017                          Respectfully submitted,

**LEVI & KORSINSKY LLP**

By: ____ /s/ *Shannon L. Hopkins* ____
Shannon L. Hopkins (SH-1887)
733 Summer Street, Suite 304
Stamford, CT 06901
Telephone: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com


Counsel for Plaintiff